## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARIA STOCKTON,

       Plaintiff,

v.                                                            No. CIV 02-1606   JB/WDS

HEEL, INC., a New Mexico Corporation,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Heel, Inc's Motion and Brief to Dismiss and/or for Summary Judgment, filed February 27, 2004 (Doc. 34).  The Court held a hearing on this motion on June 4, 2004.  The primary issues are whether: (i) there is evidence establishing the existence of an implied employment contract; (ii) the Defendant's actions were egregious enough to support a cause of action for intentional infliction of emotional distress and a claim for punitive damages; and (iii) the Plaintiff has offered evidence that the Defendant terminated her employment based on gender discrimination.  Because the Court finds that there is no evidence establishing the existence of an implied employment contract and that the Defendant's actions were not egregious enough to support a cause of action for intentional infliction of emotional distress and a claim for punitive damages, the Court will grant the motion and dismiss these claims.  Because the Court finds that the Plaintiff has offered some evidence that the Defendant terminated her employment based on gender discrimination, the Court will deny the motion as to that claim.

### FACTUAL BACKGROUND

The Plaintiff, Maria Stockton, began her employment as a temporary employee with the Defendant, Heel, Inc., in late 2000.  After a few months as a temporary employee, Heel hired

Stockton full time as an inside sales representative.  Heel, an Albuquerque company which manufactures and distributes homeopathic drugs, sells products nationally and internationally by using the services of both inside and outside sales representatives.

## I.  FACTS RELEVANT TO STOCKTON'S IMPLIED CONTRACT CLAIM.

Heel contends that Stockton was an at-will employee, while Stockton maintains that an implied employment contract existed between her and Heel.  Stockton's employment with Heel was uneventful until the spring of 2002.  In the spring of 2002, Heel terminated Stockton's employment.  Heel asserts that it did so because Stockton was insubordinate; Stockton contends that, by terminating her, Heel discriminated against her on the basis of her gender.

Stockton's application for employment with Heel included the following acknowledgment: "I understand that just as I am free to resign at any time, the employer reserves the right to terminate my employment at any time, with or without cause and without prior notice.  I understand that no representative of the employer has the authority to make any assurances to the contrary." Employment Application, dated November 4, 2000.  Heel's employee handbook contained the following statements:

> At Will
>
> Both Heel, Inc. and the employee are free to end the employment relationship at will. Employees may resign from Heel, Inc. at any time or may be terminated from Heel, Inc. at any time, for any reason, with or without cause or notice.
>
> Supervisory and management personnel are not authorized to make any statements, which are not consistent with this fundamental policy.  Nothing contained in this manual, or documents provided by Heel, Inc. (such as: performance appraisals or wage grids) are intended to create, nor shall be construed as creating, an expressed or implied contract for employment or otherwise modify the "at will" relationship.
>
> *  *  *  *

In the event of conflict in the provisions of this section, and any other provision, policy or statement, this "at will" provision prevails.

Employee Handbook, revised April 2001.

The handbook in effect during Stockton's employment with Heel contains statements indicating that all violations of company policy will be evaluated on an individual basis and that Heel may apply appropriate discipline, up to and including termination.  See id. at 22.    Stockton testified that she did not believe that Heel would actually terminate an employee for no reason, but that she did understand that Heel's "at-will" policy allowed it to terminate her employment without prior notice and for no reason.  See Deposition of Maria Stockton at 32:16 - 34:7 (taken June 2, 3, and September 9, 2003).

The Employee Handbook in effect during Stockton's employment with Heel contains no requirement that there be progressive discipline before it can terminate an employee.  Deposition testimony from some of Heel's managers, however, suggests that they believed some policy of progressive discipline existed.  See Deposition of Margaret Langell at 24:22-25 (taken September 8, 2003)("Q: Was there any type of step, discipline, that was normally used on employees for disciplinary matters? A: Yes.  Q: What was that policy? A: There was a written warning policy.  Q: Is there also a verbal warning policy?  A: No, not specific."); Deposition of Egon Landgraf at 34:17-22 (taken August 27, 2003)("Q: Does Heel, Inc. have a step policy in terms of warnings?  A: Yes. Q: What is that policy?  A: It's a verbal warning in writing, and it's a written warning and another written warning before somebody gets dismissed.").  There is a specific form that Heel uses for disciplinary notices, which has spaces to indicate verbal warnings, written warnings, and final warnings.  See Disciplinary Notice form.  Heel contends that, while Heel has forms that would allow

its managers to impose progressive discipline if they choose, progressive discipline is not required or encouraged, and varies depending on individual circumstances. <u>See</u> Deposition of DeAnne E. Zirker at 15:5-18 (taken January 22, 2004)("Q: Okay.  Let me ask it this way then: it's my understanding that at Heel you had forms, that if you were -- even if you were going to give a verbal reprimand, you would fill out a form that would kind of memorialize what had been done; is that correct?  A: There were forms, but they weren't -- it wasn't a policy.  So they weren't filled out by everybody or for everybody.").

Stockton read both Heel's handbook and her employment application, which she also signed. <u>See</u> Stockton Depo. at 27-29.  Stockton nevertheless asserted in her deposition that she assumed Heel had a progressive discipline policy.  Stockton based this assumption on two factors: (i) when Zirker terminated Albert Torres' employment after a series of written warnings, Zirker held a meeting to explain that she had so extensively documented Torres' problems before firing him because of his disability (Attention Deficit Disorder) and Zirker's desire to avoid any problems with the Americans with Disabilities Act, <u>see</u> <u>id.</u> at 18:7-18; and (ii) her previous experience working at Southwest Airlines, which did have a progressive discipline policy, <u>see</u> <u>id.</u> at 30:20 - 31:10.

## II.   FACTS RELEVANT TO STOCKTON'S GENDER DISCRIMINATION CLAIM.

Stockton asserts that Zirker discriminated against her on the basis of her gender, <u>see</u> Stockton Depo. at 214, but does not assert specifically that Fernandez discriminated against her when he terminated her employment.  Fernandez testified that he made the decision to terminate Stockton and then discussed his decision with Zirker, and the two then contacted the Human Resources manager to determine the appropriate way to carry out the decision.  <u>See</u> Fernandez Depo. at 21-22, 71-74.

Fernandez testified that he based his decision to terminate Stockton's employment on two

incidents of insubordination.  First, shortly after Fernandez began working at Heel as Stockton's supervisor, he went to Stockton to talk with her about the reassignment of her sales territory.  <u>See</u> Stockton Depo. at 110-113.  During this conversation, Stockton became frustrated and upset, and used profanity in responding to Fernandez' request that Stockton make a decision as to which territory she would like to take over.  <u>See id.</u> at 112:17 ("I told him I felt like I was getting fucked."). Fernandez considered Stockton's attitude and behavior toward him during this conversation to be insubordinate.

Second, Fernandez testified that shortly after the conversation with Stockton, another employee, Veronica Gonzales, complained about Stockton's behavior toward Gonzales.  <u>See</u> Fernandez Depo. at 75-77.  Specifically, Gonzales told Fernandez that Stockton and two other employees, Jennifer Johnston and Victor Centeno, had drafted a letter of complaint regarding Zirker. Fernandez understood Gonzales to be complaining that Stockton, Johnston, and Centeno attempted to "bully" Gonzales into signing the letter of complaint.  <u>See id.</u>[1]  Fernandez testified that he considered both of these incidents to be examples of insubordination.  <u>See id.</u> at 72.  Based on both incidents, Fernandez decided to terminate Stockton's employment.  <u>See id.</u>

As a result of his conversation with Gonzales, Fernandez also decided to terminate Johnston's employment because, like Stockton, he had an earlier encounter with Johnston that amounted to insubordination.  <u>See id.</u> at 79-80.  Johnston had received a written warning earlier from Zirker regarding tardiness.  <u>See</u> E-mail from Zirker to Johnston, dated January 10, 2002.  Fernandez did not terminate Centeno's employment because, other than Centeno's involvement with the letter that

---

[1] Gonzales' deposition testimony is that she did not tell Fernandez that Stockton, Johnston, or Centeno bullied her with regard to the letter.  <u>See</u> Deposition of Veronica Lynn Gonzales at 34:19-22 (taken September 8, 2003).

Gonzales told Fernandez about, Fernandez had not had any further negative experiences with Centeno. See id. 87-88. Egon Landgraf, the general manager of Heel, testified that he gave Centeno a verbal warning in relation to Centeno's involvement with the complaint letter because Landgraf determined that the letter was written during company hours and thus used company resources. See Deposition of Egon Landgraf at 33 (taken August 27, 2003). Landgraf did not document this verbal warning in Centeno's personnel file, and Centeno was not otherwise disciplined for his involvement with the complaint letter.

Stockton asserts that another Heel employee, Albert Torres, received more favorable treatment because he received several written warnings before Zirker terminated him for his failure to keep track of business plane tickets and receipts, for work errors, and for attendance. See Zirker Depo. at 25. As noted above, Zirker held a meeting to explain that she had so extensively documented Torres' problems before firing him because of his disability (Attention Deficit Disorder) and Zirker's desire to avoid any problems with the Americans with Disabilities Act. See Stockton Depo. at 18:7-18

Before her termination, Stockton had no prior disciplinary record. See Stockton Personnel file. She won an award for teamwork. See Stockton Depo. at 87. Another Heel employee testified that Zirker played favorites and that Torres was one of Zirker's good friends. See Deposition of Laura Parent at 45-46 (taken July 16, 2003). In the Heels sales department, from 2000 to 2002 when Fernandez discharged Stockton, four other employees were discharged. Three of them were female and one was male (Torres). Of the four, three were terminated for alleged misconduct, but only Torres received a final warning. See List of Terminated Employees Heel provided to the EEOC.

### STANDARDS FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT[2]

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U. S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers.  See Lujan v. National Wildlife Federation, 497 U. S. 871, 888 (1990). The court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.  See Kennedy v. Silas Mason Co., 334 U. S. 249, 252 (1948).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U. S. at 323.  The moving party can meet this burden by pointing out to the court a lack of evidence as to an essential element of the non-movant's claim. The burden then shifts to the non-movant to present specific facts, admissible at trial, from which a rational trier of fact could find for the non-movant.  See Bewley v. City of Duncan, 149 F. 3d 1190 (table), 1998 WL 314382, *4 (10th Cir. 1998)(citing Fed. R. Civ. P. 56( c); Celotex Corp. v. Catrett, 477 U. S. at 324). The non-moving party may not rest on his pleadings but must set forth specific facts.  See Applied Genetics Intl v. First Affiliated Secs., Inc., 912 F. 2d 1238, 1241 (10th Cir. 1990). Under rule 56(e), only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief. See Tavery v. United States, 32 F. 3d

---

[2] Heel brings this motion as either one to dismiss – pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure – or, alternatively, one for summary judgment – pursuant to rule 56.  A rule 12(b)(6) motion may be converted into a motion for summary judgment if matters outside the pleadings are considered.  See Miller v. Glanz, 948 F. 2d 1562, 1565-66 (10th Cir. 1991). Both parties attached extensive exhibits to the briefing on this motion, and the Court has reviewed these exhibits in considering this motion. The Court, therefore, finds it appropriate to consider this motion as one for summary judgment under rule 56.

1423, 1427 n. 4 (10th Cir. 1994)( citations omitted).

For the purposes of summary judgment, the court will assume the evidence of the non-moving party to be true, will resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 255 (1986). If the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff, the court should deny summary judgment. See MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F. 2d 1115, 1121 (10th Cir. 1991).

The court should, however, grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A factual dispute is material only if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U. S. at 248. A genuine factual dispute requires the non-moving party to show more than a mere scintilla of evidence to overcome a motion for summary judgment. See id. at 252. The court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative. See id., 477 U. S. at 250-51.

In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. See Conaway v. Smith, 853 F. 2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. See

Anderson v. Liberty Lobby, Inc., 477 U. S. at 251-52.

## ANALYSIS

Stockton's Complaint includes claims for: Breach of Employment Contract (Count III); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV); Intentional Infliction of Emotional Distress (Count II); and Gender Discrimination (Count I). See Complaint for Discrimination, Intentional Infliction of Emotional Distress, Breach of Employment Contract, and Breach of Implied Covenant of Good Faith and Fair Dealing and Demand for Jury ¶¶ 19-35, at 3-5 filed December 20, 2002 (Doc. 1)("Complaint"). Stockton seeks punitive damages based on her Title VII gender discrimination claims as well as her state law claims for tortious conduct. See id. ¶¶ d-e, at 5.

## I.   BREACH OF EMPLOYMENT CONTRACT.

In Count III of her Complaint, Stockton asserts that Heel breached her employment contract. This is a state law claim that the Court must resolve by looking to New Mexico state law. See Gagnon v. Res. Tech., Inc., 19 Fed. Appx. 745 (10th Cir. 2001). Heel contends that Stockton was an at-will employee whom Heel was free to terminate at any time for any reason or for no reason at all. Stockton's breach of contract claim rests on her theory that Heel entered into an implied contract with Stockton, which required Heel to provide progressive discipline such that Stockton would receive written warnings prior to termination. See Complaint ¶ 30, at 4.

The only documentary evidence regarding the nature of Stockton's employment relationship with Heel are her application for employment and the employee handbook. Both of these documents indicate an at-will employment relationship. New Mexico courts recognize two exceptions to the at-will employment rule: (i) "wrongful termination under facts disclosing unlawful retaliatory discharge"

or (ii) "where the facts disclose the existence of an implied employment contract provision that limits

the employer's authority to discharge." Lopez v. Kline, 124 N.M. 539, 541, 953 P.2d 304, 306 (Ct.

App. 1997).  An implied contract will not be found where "the alleged promise by the employer [is]

not sufficiently explicit." Garrity v. Overland Sheepskin Co., 121 N.M. 710, 710, 917 P.2d 1382,

1382 (1996)(internal quotation marks and citation omitted).  To support a claim of implied contract,

the employer's promise must be sufficiently explicit to give rise to a reasonable expectation that the

employer restricted its absolute ability to discharge employees at will.  See Kiedrowski v. Citizens

Bank, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995).

Stockton contends that Heel restricted its ability to discharge its employees at will such that

it bound itself to provide written warning before termination.  Stockton asserts that this progressive

discipline requirement was an unwritten Heel policy, but one that created an implied contract.  The

New Mexico Uniform Jury Instructions require a plaintiff asserting wrongful discharge under the

theory of an implied agreement to establish the following:

> In this case you must determine whether there was an implied agreement that Heel
> would follow a particular procedure in discharging Stockton specifically or in
> discharging Heel's employees generally.  In order for there to be an implied
> agreement, there must be a promise, representation or conduct sufficiently specific to
> create a reasonable expectation in the mind of Stockton that Heel would follow a
> particular procedure in discharging Stockton or Heel's employees generally.  In
> determining whether there was an implied agreement, you may consider all the
> surrounding circumstances, including the parties' words and actions, what they
> wanted to accomplish, the way they dealt with each other, how other employees in
> the same or similar circumstances were customarily dealt with by Heel and any
> writings, handbooks or procedures used by Heel.
>
> How other employees in the same or similar circumstances were customarily dealt
> with cannot by itself constitute sufficient evidence to establish an implied contract.
> If such an agreement existed, and if Stockton's discharge violated that agreement,
> then the discharge was wrongful.

-10-

UJI-Civil 13-2303, NMRA.  To prevail, Stockton must establish that Heel made a promise or representation or engaged in conduct which created a reasonable expectation in her mind that Heel had a policy of progressive discipline.  Stockton has not done so.

Stockton testified that she believed Heel had a progressive discipline policy, but when pressed on this point, she conceded that she only had two reasons on which to base this belief.  The first related to the discharge of fellow employee Albert Torres.  Stockton testified that Torres received numerous written warnings before his termination.  See Stockton Depo. at 18-24.  When Zirker terminated Torres, she met with Stockton and explained that Torres received numerous written warnings because of his disability and Heel's interest in avoiding any problems with the Americans with Disabilities Act.  See id.  The Court does not see this as evidence of conduct suggesting that Heel had a progressive discipline policy in general.  Rather, Zirker's meeting with Stockton is evidence that Zirker made an effort to clarify why Torres, as a special case, received written warnings before termination.  The Court does not believe this evidence establishes a genuine issue of material fact whether Heel communicated a policy of progressive discipline to Stockton.

Stockton also testified that she "assumed" there was a progressive discipline policy based on her experience as an employee at Southwest Airlines and that she did not believe Heel could or would terminate an employee without warning and for no reason.  See Stockton Depo. at 32-33.  Again, when pressed on this point, Stockton conceded that all of the documentation she had read and signed regarding her employment with Heel established that she was in an at-will employment relationship.  Thus, while Stockton may have made assumptions regarding the nature of her employment with Heel, she admits that those assumptions are counter to the representations Heel made to her.

The jury instruction quoted above indicates that New Mexico law requires some

-11-

communication – through words or conduct – giving rise to an expectation on the part of the employee.  That Heel managers during the course of this litigation have made statements indicating the possible existence of a progressive discharge policy does not change the fact that Stockton herself did not have a reasonable expectation of such a policy before this lawsuit.  New Mexico's requirement is a logical one: the law will not allow a plaintiff to pursue an implied contract claim on the basis of an unwritten company policy when the company has not communicated such a policy to the plaintiff in any way.

Thus, a plaintiff may not rely on an implied contract when she had no knowledge of it. Stockton has not pointed to evidence in the record creating a genuine issue of material fact whether Heel communicated – through its words or conduct – the existence of a progressive discipline policy to her.  The Court will, therefore, grant the motion with regard to Stockton's claim for breach of employment contract.

## II.   BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

New Mexico law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing when employment is at will and "the parties have expressed their intent in an unambiguous written contract."  Kropinak v. ARA Health Servs., 2001-NMCA-081, ¶ 1, 33 P.3d 679, 680.  See also Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 731, 749 P.2d 1105, 1110 (1988).  Under such circumstances, "it is improper to invoke the implied covenant of good faith and fair dealing to vary the at-will termination provision in the written agreement." Kropinak v. ARA Health Servs., 2001-NMCA-081, ¶ 11, 33 P.3d at 682.

The Court has already found that Stockton's employment was at-will, and Heel did not alter

this employment by creating an implied contract.  While there does not appear to be an unambiguous written contract, per se, the written employee handbook and Stockton's employment application both unambiguously establish her at-will status.  Stockton has not created a genuine issue of material fact whether an employment contract existed altering her at-will status.  Thus, the covenant of good faith and fair dealing does not apply.  The Court will, therefore, grant the motion with respect to Stockton's claim for a breach of the covenant of good faith and fair dealing.

**III.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

In Count II of her Complaint, Stockton asserts a claim for intentional infliction of emotional distress.  This is also a state law claim that the Court must decide based on New Mexico law.  In recognizing the applicability of the tort of intentional infliction of emotional distress in employment cases, the Supreme Court of New Mexico adopted the Restatement (Second) of Torts § 46 (1965): "'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'"  Newberry v. Allied Stores, Inc., 108 N.M. 424, 432, 773 P.2d 1231, 1239 (1989)(quoting Restatement (Second) of Torts § 46 (1965)).  See also Padwa v. Hadley, 127 N.M. 416, 419, 981 P.2d 1234, 1237 (Ct. App. 1999).  New Mexico law will impose liability only for conduct that is:

> "[S]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

Dominguez v. Stone, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct. App. 1981)(quoting Restatement (Second) of Torts § 46, cmt. d).  This Court has previously pointed out that an employer's actions

must rise to a level that is more than "hurtful and unpleasant" for a plaintiff to recover under New Mexico law based on a claim for intentional infliction of emotional distress.  See Salazar v. Furr's Inc., 629 F. Supp. 1403, 1411 (D.N.M. 1986)(Campos, J.).

Stockton supports her claim for intentional infliction of emotional distress by asserting that her supervisors continually derided her job performance and allegedly denied her medical insurance benefits for surgery.  Viewing the evidence in the record in the light most favorable to Stockton, the Court does not believe she has established a genuine issue of material fact whether her supervisors' actions rise to the level of egregiousness required to recover under this claim.  The Court will, therefore, grant summary judgment on Stockton's claim for intentional infliction of emotional distress.

## IV.    **GENDER DISCRIMINATION.**

In Count I of her Complaint, Stockton asserts that Heel discriminated against her on the basis of her gender.  Stockton has no direct evidence that Fernandez intentionally discriminated against her on the basis of her gender when he discharged her.  When no direct evidence of discrimination is available, a plaintiff may proceed with indirect evidence using the burden-shifting approach established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The first step of the McDonnell Douglas approach in a discriminatory discharge case requires a plaintiff to establish a prima facie case by showing that: (i) she is a member of a protected class; (ii) she was qualified for her job; (iii) despite her qualifications, she was discharged; and (iv) the job was not eliminated after her discharge.  See English v. Colorado Dep't of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001).[3]

---

[3] Both parties incorrectly identify the prima facie case that Stockton must establish as including an element of comparison, such that Stockton must show that similarly situated employees were treated differently as a part of her prima facie case.  The Tenth Circuit has rejected this comparison as an element of the prima facie case for discriminatory discharge.  See English v. Colorado Dep't of Corrections, 248 F.3d at 1008 ("[A] plaintiff [in discriminatory discharge cases]

Upon such a showing, the burden of production, but not persuasion, shifts to the employer to demonstrate a "legitimate nondiscriminatory reason" for the employment action.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  If the employer offers such a nondiscriminatory reason, then the plaintiff bears the burden of showing that the employer's proffered legitimate reasons were "not its true reasons, but were a pretext."  Id. at 142-43.

### A.   STOCKTON HAS ESTABLISHED A PRIMA FACIE CASE.

Stockton has established a prima facie case of discriminatory discharge.  She is a woman, and thus a member of a protected class.  There is no dispute as to her qualifications and also no dispute that, despite her qualifications, Heel terminated her employment.  The parties have not offered evidence whether Heel eliminated Stockton's position.  This Court, following the example of the Tenth Circuit in English v. Colorado Dep't of Corrections, concludes that, given Heel's stated reasons for terminating Stockton, the position remains.  See English v. Colorado Dep't of Corrections, 248 F.3d at 1008 ("Neither party has raised evidence tending to show whether English's position was eliminated after his discharge.  However, given the DOC's stated reason for firing English -- that he had violated DOC rules by engaging in a sexual relationship with an inmate -- we have no trouble concluding that there is sufficient evidence in the record to find English was not terminated because of a workplace reduction.").

---

does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden[.]").  A plaintiff may, however, offer such evidence in support of the third step of the McDonnell Douglas approach, pretext.  See id. at 1009.  Thus, while Heel disputes that Stockton has met her prima facie burden, it does so on the basis that she did not show that similarly situated employees were treated differently and, therefore, does not dispute any of the elements of the appropriate prima facie case.  The Court will treat Heel's arguments about similarly situated employees as disputing Stockton's arguments on the third step of the McDonnell Douglas approach, namely pretext.

**B.     HEEL HAS PROFFERED LEGITIMATE, NON-DISCRIMINATORY REASONS FOR DISCHARGING STOCKTON.**

Because Stockton has asserted a prima facie case, the burden thus shifts to Heel to offer a legitimate, nondiscriminatory reason for discharging Stockton.  For this second step of the McDonnell Douglas test, Heel asserts that it terminated Stockton for insubordination.  Specifically, Fernandez terminated Stockton for two instances of insubordination: (i) using profanity directed at the company and Fernandez in a conversation with Fernandez; and (ii) Fernandez' belief that Stockton attempted to bully another employee into signing the letter of complaint against Zirker.  Heel's proffered reasons satisfy the second step of McDonnell Douglas.  See EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1317 (10th Cir.1992)("Step two [of McDonnell Douglas] requires that the defendant explain its actions against the plaintiff in terms that are not facially prohibited. . . .  It does not require the defendant to explain any differences in treatment between the plaintiff and others.").

**C.     STOCKTON HAS RAISED A GENUINE ISSUE OF MATERIAL FACT WHETHER HEEL'S PROFFERED REASONS FOR DISCHARGING HER ARE A PRETEXT FOR DISCRIMINATION.**

The burden thus shifts back to Stockton for the third step of McDonnell Douglas, in which the Court must determine whether Stockton countered Heel's articulated non-discriminatory reasons for firing her by providing specific facts showing that Heel's reasons for its decision are pretextual or motivated by gender discrimination.  See Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004)("Summary judgment in favor of the City is warranted only if Salguero has failed to produce any evidence from which a reasonable inference could be drawn that the City's proffered reasons were pretextual.")(internal quotation marks and citations omitted).  "[I]n determining whether the [employer's] proffered reasons for its decision were pretextual, we must examine the facts as they

-16-

appear to the person making the decision to terminate [the employee]."  Id. at 1176 (internal

quotation marks and citation omitted).

> A plaintiff typically establishes pretext in one of three ways:
>
> (1) with evidence that the defendant's stated reason for the adverse employment
> action was false; (2) with evidence that the defendant acted contrary to a written
> company policy prescribing the action to be taken by the defendant under the
> circumstances; or (3) with evidence that the defendant acted contrary to an unwritten
> policy or contrary to a company practice when making the adverse employment
> decision affecting the plaintiff.  A plaintiff who wishes to show that the company
> acted contrary to an unwritten policy or to company practice often does so by
> providing evidence that he was treated differently from other similarly-situated
> employees who violated work rules of comparable seriousness.

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)(citations omitted).

Stockton offers as evidence of pretext the following: (i) evidence that Heel has an unwritten policy

of progressive discipline; (ii) evidence that a male employee in the sales division received progressive

discipline before termination; (iii) evidence that Stockton did not receive progressive discipline but

was, instead, discharged without any warnings; and (iv)  evidence that the two female employees

involved in the complaint letter were both terminated, while the one male involved in the complaint

letter was not terminated.  Thus, Stockton seeks to show pretext by providing evidence of an

unwritten policy that Heel acted contrary to, and evidence that similarly-situated employees outside

her protected class were treated differently.

The Court believes that Stockton has created a genuine issue of material fact with regard to

pretext.  Stockton has provided evidence that Heel has a policy of progressive discipline in the form

of deposition testimony from Heel's own management representatives.  It is undisputed that Stockton

did not receive progressive discipline, but was instead discharged with no prior warning, written or

verbal.  This alone, based on the Tenth Circuit's standards in Kendrick, gives an inference of

discriminatory intent in that there is evidence of an unwritten policy that the employer did not follow with respect to Stockton. Further, there is evidence in the record that Heel followed this progressive discipline policy with respect to two males: Torres and Centeno.

Heel contends that Stockton's insubordinate behavior was of such a character that it did not have to follow any progressive discipline before discharging her. Heel did not, however, point to evidence in the record establishing that it limited its progressive discipline policy to minor infractions or infractions short of insubordination. Heel maintained throughout the briefing of this motion and the hearing before the Court that no such policy exists -- a position that is in conflict with the testimony of Heel's management representatives. There is evidence before the Court that Heel has such a policy, applied the policy to two males, and did not apply the policy with regard to Stockton. The Court will, therefore, deny the motion as to Stockton's gender discrimination claim.

## V.   PUNITIVE DAMAGES.

Stockton's Complaint seeks punitive damages based on her Title VII gender discrimination claims as well as her state law claims for tortious conduct. See Complaint ¶¶ d, e, at 5. Punitive damages are appropriate under Title VII when the plaintiff establishes that the employer acted intentionally or recklessly in discriminating against the plaintiff. See Kolstad v. American Dental Ass'n, 527 U.S. 526, 534 (1999)("'A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices *with malice or with reckless indifference to the federally protected rights of an aggrieved individual.*' (Emphasis added.)")(quoting 42 U.S.C. § 1981a(b)(1)). Further, "[t]he very structure of § 1981 a suggests a congressional intent to authorize punitive awards in only a

subset of cases involving intentional discrimination." Id.

The standard is similar for an award of punitive damages for tortious conduct under New Mexico law. See McNeill v. Rice Engineering & Operating Inc., 133 N.M. 804, 812-13, 70 P.3d 794, 802-03 (Ct. App. 2003)("A mental state sufficient to support an award of punitive damages will exist when the defendant acts with reckless disregard for the rights of the plaintiff-i.e., when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fail[s] to exercise care to avoid the harm.")(internal quotation marks and citations omitted).

Viewing the record in the light most favorable to Stockton, the Court does not believe she has created a genuine issue of material fact whether Heel acted with malice or in a recklessly indifferent manner so as to justify an award of punitive damages. As with Stockton's intentional infliction of emotional distress claim, the Court does not see the egregious conduct in this case that punitive damage awards are designed to correct. The Court will, therefore, grant the motion with regard to Stockton's request for punitive damages.

**IT IS ORDERED** that the Defendant Heel, Inc's Motion and Brief to Dismiss and/or for Summary Judgment is granted in part and denied in part. The Court will grant the motion in part and dismiss with prejudice the Plaintiff's claims for: breach of employment contract; breach of the implied covenant of good faith and fair dealing; intentional infliction of emotional distress; and punitive damages. The Court will deny the motion as to the Plaintiff's claim for gender discrimination.

_____
UNITED STATES DISTRICT JUDGE

-19-

*Counsel*:

Jeffrey A. Dahl
Lamb, Metzgar, Lines & Dahl, P.A.
Albuquerque, New Mexico

  *Attorney for the Plaintiff*

Margaret C. Ludewig
Stephanie Landry
Landry & Ludewig, L.L.P.

  *Attorneys for the Defendant*